Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 8481 | **DATE** | 11/17/2000 |
| **CASE TITLE** | GILBERT PURZE, ETAL vs. VILLAGE OF WINTHROP HARBOR | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   **Motion (11-1) for summary judgment is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | NOV 22 2000 date docketed | | |
| ✓ | Docketing to mail notices. | | | 18 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 00 NOV 24 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



GILBERT PURZE and JEROME PURZE,

Plaintiffs,

v.

VILLAGE OF WINTHROP HARBOR,

Defendant.

No. 99 C 8481
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs Gilbert and Jerome Purze own a parcel of vacant land in a rural subdivision of the Village of Winthrop Harbor. Plaintiffs sought to develop their property by building a housing development on it, but the Village found fault with the plat plaintiffs submitted and disallowed it. The Village subsequently rejected three of plaintiffs' revised plats. Plaintiffs allege that the Village has illegally blocked the development of their property by refusing to allow any variance from the Zoning Code or the Subdivision Code, even though other similarly situated owners were allowed deviations. Plaintiffs sued the Village under 42 U.S.C. § 1983 alleging an equal protection violation; they also asserted an unlawful takings claim and a due process claim. Defendant now moves for summary judgment.

The undisputed facts in this case are as follows:

The Purzes have sought approval for the development of their property since January 1998. Their original plan was to build 55 homes of 1,600-1,800 square footage. In order to do this, the Village Planning and Zoning Board (PZB) would first have to re-zone the property from



R-5 (rural zoning) to R-3 (residential zoning).[1] Plaintiffs petitioned for zoning re-classification. The PZB held a public hearing on the matter on March 18, 1998. Members of the public overwhelmingly opposed the idea. About 120 people signed a petition in support of maintaining rural zoning ordinances. Many members of the public attended the meeting to protest re-classification.[2] Others wrote letters in opposition. The PZB voted against re-classification, and the Village Board affirmed this decision.

A year later, in March 1999, plaintiffs made a second attempt to gain the Village's approval for their housing development. They presented a preliminary plat for re-subdivision of their property, which purported to conform with R-5 zoning requirements. This plat contained fewer houses and more square footage per lot. The PZB and the Village Board again denied approval of the preliminary plat because it did not comply with Winthrop Harbor ordinances. Specifically, several lots were less than the required 85 feet and less than the required square footage for R-5 zoning, maintenance easements were less than the required 20 feet, and the plat required a variance for "double frontage" lots.[3]

In May 1999, plaintiffs presented a revised preliminary plat to the PZB. Two lots were still less than the required 85 feet and the maintenance easements were less than 20 feet. The Fire Chief and Police Chief expressed concern about access to the proposed development and requested consideration of a second exit. In addition, the development contained a block in

---

[1] R-5 zoning is rural in nature, requiring a lot width of 85 feet and total square footage of 17,500 square feet. R-3 zoning requires lot widths of 75 feet and total square footage of 9,000 feet.

[2] Attendees expressed concerns about increased traffic volume, the cutting down of trees, the size and quality of the homes, and the threat to the "rural feel" of the area.

[3] "Double frontage" refers to a single lot that has an entry from two streets.

excess of 1,300 feet in violation of the Subdivision Code § 182.031. The PZB considered that this problem could be eliminated by constructing a north/south street through the property. While the PZB recommended approval of the revised preliminary plat (with numerous stipulations), the Village denied the plat because it did not strictly comply.

In August 1999, the Village Board altered its regulations to allow plaintiffs to resubmit their proposed plat to the PZB for further consideration. Plaintiffs submitted a third plat in September 1999. Several lots were still less than the required 85-foot width and the maintenance easements were still less than the required 20 feet. The addition of an off-set north/south road to eliminate the 1,300 foot block problem created a "road jog" of less than 125 feet in violation of Subcode § 182.011(M).[4] Members of the public in attendance objected to the approval of the plat. On a divided vote, the PZB approved the plat with a stipulation about the road. The Village Board again denied approval of the amended plat. The Purzes filed this lawsuit in December 1999.

I.   **Equal Protection**

The Purzes do not hold themselves out as members of a protected class. Rather, they sue under a "class of one theory," alleging that they were victims of the Village's arbitrary and capricious zoning decisions. See *Village of Willowbrook v. Olech*, 120 S. Ct. 1073 (2000).

As class of one plaintiffs, the Purzes must show that the Village treated similarly situated property owners more favorably than they. In this case it is undisputed that none of plaintiffs' preliminary plats strictly complied with Winthrop Harbor ordinances.[5] The Purzes argue that

---

[4]A "road jog" of less than 125 feet would provide a hazardous turning radius for emergency vehicles. Defendants note that this ordinance has been enforced before, including against Winthrop Harbor school.

[5]Plaintiffs' own expert witness, Mr. Hammer, admits as much in his deposition testimony.

3

other similarly situated property owners were granted variances from the zoning code, while they were not. They proffer three examples: (1) the owner of property east of plaintiffs' was allowed to create cul-de-sacs which did not conform to the code as well as a block in excess of 1,300 feet in violation of the Subdivision Code § 182.031; (2) two of plaintiffs' neighbors were allowed variances for "set backs"; (3) approximately ten years ago, the Village allowed developments that included lots with double frontages.

Only the decisions to allow a block length in excess of 1,300 feet and to allow double frontages are at all relevant here. Plaintiffs never asked for a set back or a cul-de-sac. These two examples--one of which occurred ten years ago--are not sufficient evidence to allow a reasonable jury to find that similarly situated property owners were treated more favorably than plaintiffs.

But there is another, stronger reason that plaintiffs' equal protection claim cannot prevail. In a class of one equal protection case, "plaintiff must present evidence that the defendant deliberately sought to deprive him of the equal protection of the laws for reasons of a personal nature unrelated to the duties of the defendant's position." *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). In other words, the Purzes must show that the Village's actions were impossible to relate to legitimate government objectives. See *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995).

Plaintiffs make a weak argument that the Village showed animus by persistently refusing to approve its plans. They also say that malice can be inferred from one board member's comment that plaintiffs did not help support the building of a street near their property. Finally, plaintiffs argue, the owner of adjoining property, who was against plaintiffs' development plan, was supporting one of the Village Trustees in a bid for a seat on the County Board. (Plaintiffs

4

offer no evidence to support this theory). These allegations, even when taken together, do not come close to the degree of personal ill will or animus required to state an equal protection claim in a class of one case. Cf. *Forseth v. Village of Sussex*, 199 F.3d 363 (7th Cir. 2000)(animus requirement satisfied for purposes of motion to dismiss where chairman of the village board, plaintiff's neighbor, required plaintiff to confer to him a portion of plaintiff's land as a condition of approval of the plat).

## II. Takings Claim

Plaintiffs complain that the Village's requirement that they construct a street as a precondition to approval of its plan unlawfully imposed the cost of construction upon plaintiffs and constituted an unlawful taking.

Federal courts are not zoning boards of appeal. See *Albiero v. City of Kankakee*, 122 F.3d 417, 420 (7th Cir. 1997). The Seventh Circuit has repeatedly expressed strong views about the proper forum in which to raise complaints about over-regulation of state or local land: state court. See *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 1994) (motion to dismiss granted where plaintiff property owner sued the city for delaying its requests for zoning reclassification); *Gamble v. Eau Claire County*, 5 F.3d 285, 286 (7th Cir. 1993) (landowner who failed to pursue state compensation remedies is said to have "forfeited any claim based on the takings clause to just compensation.").

Under Illinois law, a property owner who is dissatisfied with municipal legislation has a judicially-created remedy of inverse condemnation for the property. *Hager v. City of West Peoria*, 84 F.3d 865, 868 (7th Cir. 1996). Plaintiffs also have recourse to the common law writ

5

of certiorari. See *River Park*, 23 F.3d at 167. Because plaintiffs have failed to exhaust state law remedies, their takings claim is not ripe.

### III. Due Process

Finally, the Purzes complain that the Village violated their due process rights when, in 1986, as a part of a comprehensive zoning change, it re-zoned the property now under dispute from R-2 to R-5 zoning. The Village argues that plaintiffs do not have standing to complain because while the land has been in the Purze family for many years, these particular plaintiffs did not obtain an ownership interest in the property until June 1996. In addition, no member of the Purze family came forward to dispute the zoning change for twelve years after it occurred.

I need not reach the standing question because I find that the Village provided all the process that was "due" before it re-classified the land to R-5 status. In this circuit, cities may elect to make zoning decisions through political processes with no hearing of any kind. See *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 166 (7th Cir. 2000). Here, the Village held a public hearing before it made the re-classification in 1986. It also sent out 200 mailings to residents and published a notice alerting the public to the proposed zoning change in the local papers. The procedures due in zoning cases are minimal, and they were more than satisfied here.

The Village's motion for summary judgment is granted, terminating the case.

ENTER:

James B. Zagel
United States District Judge

DATE: 11/17/00